**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: 17-cv-2188**

| | |
|---|---|
| Levi Jensen and Whitney Strantz, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Village Green Management Company, LLC and Park Glen Corporation,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Levi Jensen and Whitney Strantz (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, but and through their attorney, bring this action against Village Green Management Company, LLC and Park Glen Corporation ("Defendants"), and hereby allege as follows:

**NATURE OF THE CASE**

1.  This is a consumer class action lawsuit brought by Plaintiffs, individually and on behalf of all other similarly situated persons (i.e., the Class Members), whose personally identifiable information, including names, addresses, dates of birth, driver's licenses, Social Security numbers (collectively referred to as "PII"), entrusted to Defendants was lost and/or stolen and made accessible to a thief or thieves while in the possession, custody and control of Defendants.

2.  Through information and belief, from approximately February 9, 2017 through the

present date, documentation containing the PII of Plaintiffs and thousands of other Class Members was left unguarded, unprotected, and/or otherwise subject to theft by third parties who otherwise had no reason to be in possession of such information.

3.  Defendants disregarded Plaintiffs' and the other Class Members' privacy rights by intentionally, willfully, recklessly and/or negligently failing to take the necessary precautions required to safeguard and protect their PII from unauthorized disclosure. Plaintiffs' and Class Members' PII was compromised and/or stolen.

4.  Defendants' intentional, willful, reckless and/or negligent disregard of Plaintiffs' and Class Members' rights directly and/or proximately caused a substantial unauthorized disclosure of Plaintiffs' and Class Members' PII. The improper use of PII by unauthorized third parties can result in an adverse impact on, among other things, a victim's credit rating and finances. The type of wrongful PII disclosure made by Defendants is the most harmful because it generally takes a significant amount of time for a victim to become aware of misuse of that PII.

5.  On behalf of themselves and Class Members, Plaintiffs have standing to bring this lawsuit because they were damaged as a direct and/or proximate result of Defendants' wrongful actions and/or inaction and the resulting Data Breach.

6.  Defendants' wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiffs and Class Members at an imminent, immediate, and continuing

increased risk of identify theft and identify fraud.[1]  Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released a 2012 Identify Fraud Report (the "Javelin Report") quantifying the impact of data breaches.  According to the Javelin Report, individuals whose PII is subject to a reported data breach, such as the Data Breach at issue here, are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft.  Moreover, there is a high likelihood that significant identity theft and/or identity fraud has not yet been discovered or reported and a high probability that criminals who may now possess Plaintiffs' and Class Members' PII have not yet used the information but will do so later, or re-sell it.  Even without such loss, Plaintiffs and Class Members are entitled to relief and recovery, including statutory damages under federal statutory provisions as set forth herein.

7.    Defendants' failure to safeguard and secure Plaintiffs' and Class Members' PII violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq.

8.    Defendants' failure to safeguard and secure Plaintiffs' and Class Members' PII violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Defendants failed to adopt, implement, and/or maintain adequate procedures to protect such information and limit its dissemination to the permissible purposes under the FCRA.  In further violation of the FCRA, Defendants failed to protect ad

---

[1] According to the United States Government Accounting Office, the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities, such as when PII is used to commit fraud or other crimes (credit card fraud, phone or utilities fraud, bank fraud, and government fraud (theft of government services).

wrongfully disseminated Plaintiffs' and Class Members' PII, which is personal identifying information, specifically defined in, and protected by the FCRA.  As a direct and proximate result of Defendants' willful, reckless and/or grossly negligent violations of the FCRA, an unauthorized third party (or parties) obtained Plaintiffs' and Class Members' PII for no permissible purpose under FCRA.

9.      Defendants' wrongful actions and/or inaction also constitute common law negligence and common law invasion of privacy by public disclosure of private facts.

10.     Plaintiffs, on behalf of themselves and the Class Members, seek actual damages, economic damages, statutory damages, nominal damages, exemplary damages, injunctive relief, attorney's fees, litigation expenses and costs of suit.

## I.     JURISDICTION

11.     Jurisdiction of this court arises under 18 U.S.C. § 2721, 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (Commerce), 15 U.S.C. § 1681 et seq., 18 U.S.C. § 2724(a) (DPPA) and 28 U.S.C. § 1367 (Supplemental).

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

13.     This Court has personal jurisdiction over Defendants because, at all relevant times, Defendants conducted (and continue to conduct) substantial business in the District of Minnesota.

14.     Venue is proper in the District of Minnesota pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part, if not all, of the events giving rise to this action occurred in the District of Minnesota, and Plaintiffs resides in the State of

Minnesota, along with Defendants' conduct substantial business in the District of Minnesota.

## II.    PARTIES

15.  Plaintiff Levi Jensen ("Plaintiff Jensen") is an individual consumer currently residing in the City of Hugo, Washington County, State of Minnesota. Plaintiff Jensen was and is a "person" as defined under 18 U.S.C. § 2725(2), is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), and is protected by and entitled to enforce the remedies of the DPPA and FCRA.

16.  Plaintiff Jensen was a resident at an apartment complex that is owned by Defendant Park Glen Corporation ("Defendant Park Glen") and was at one time managed by Defendant Village Green Management Company, LLC ("Defendant Village Green") during the relevant time period, and, through information and belief, his PII was subjected to the aforementioned Data Breach. Recently, Plaintiff Jensen has learned that his PII was used to purchase items on the internet by an unknown individual(s).

17.  Through information and belief Plaintiff Jensen's PII, which he entrusted to Defendants and which Defendants failed to properly safeguard, was stolen from Defendants sometime from February 9, 2017 through the present.

18.  As a direct and/or proximate result of Defendants' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Jensen has suffered economic damages and other actual harm, including but not limited to emotional distress over learning of the theft of his PII. Defendants' wrongful disclosure of and failure to safeguard

Plaintiff Jensen's PII has also placed him at an imminent, immediate, and continuing increased risk of harm for identity theft and identity fraud.

19.   Plaintiff Whitney Strantz ("Plaintiff Strantz") is an individual consumer currently residing in the City of Roseville, County of Ramsey, State of Minnesota. Plaintiff Strantz was and is a "person" as defined under 18 U.S.C. § 2725(2), and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), and is protected by and entitled to enforce the remedies of the DPPA and FCRA.

20.   Plaintiff Strantz was a resident at an apartment complex that is owned by Defendant Park Glen Corporation ("Defendant Park Glen") and was at one time managed by Defendant Village Green Management Company, LLC ("Defendant Village Green") during the relevant time period, and, through information and belief, her PII was subjected to the aforementioned Data Breach.

21.   Through information and belief Plaintiff Strantz's PII, which she entrusted to Defendants and which Defendants failed to properly safeguard, was stolen from Defendants sometime from February 9, 2017 through the present.

22.   As a direct and/or proximate result of Defendants' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff Strantz has suffered economic damages and other actual harm, including but not limited to emotional distress over learning of the theft of her PII. Defendants' wrongful disclosure of and failure to safeguard Plaintiff Strantz's PII has also placed her at an imminent, immediate, and continuing increased risk of harm for identity theft and identity fraud.

23.     Defendant Village Green Management Company LLC (hereinafter "Defendants" and/or "Defendant Village Green"), is engaged in the management of apartment complexes.  Defendant Village Green has its principal place of business located at 30833 Northwestern Highway, Suite 300, Farmington Hills, Michigan 48334. Defendant Village Green is engaged in business throughout the State of Minnesota.

24.     Defendant Village Green was and is a "person" as defined under 18 U.S.C. § 2725(2) and 15 U.S.C. § 1681a(b), is a "furnisher" of credit information as that term is used in 15 U.S.C. § 1681s-2(b), and  is restricted by and subject to the remedies of the DPPA and FCRA.

25.     Defendant Village Green is liable for the acts of its employees, agents, and independent  contractors, and those of its subsidiaries and affiliates, under theories of respondeat superior,  agency, and vicarious liability, among others.

26.     Defendant Park Glen Corporation (hereinafter "Defendants" and/or "Defendant Park Glen"), is engaged in the ownership of apartment complexes.  Defendant Park Glen has its principal place of business located at 275 E. Broad Street, Columbus, Ohio  43215. Defendant Park Glen is engaged in business throughout the State of Minnesota.

27.     Defendant Park Glen was and is a "person" as defined under 18 U.S.C. § 2725(2) and 15 U.S.C. § 1681a(b), is a "furnisher" of credit information as that term is used in 15 U.S.C. § 1681s-2(b), and is restricted by and subject to the remedies of

the DPPA and FCRA.

28. Defendant Park Glen is liable for the acts of its employees, agents, and independent contractors, and those of its subsidiaries and affiliates, under theories of respondeat superior, agency, and vicarious liability, among others.

## III.   FACTUAL ALLEGATIONS

29. In the regular course of its business, Defendants collect and maintain possession, custody, and control of a wide variety of Plaintiffs' and Class Members' personal and confidential information, including: names, addresses, dates of birth, Social Security numbers, drivers' license information, credit information, and banking information (collectively referred to as "PII").

30. Defendants stored Plaintiffs' and Class Members' PII, pursuant to their own statements, and on February 9, 2017, mailed a package containing a zip drive to Defendant Park Glen, and while in transit, the package was damaged and the zip drive was separated from the package and never made it to its destination. (*See* Attached Exhibit A).

31. Between February 9, 2017, through the present, an untold number of applications and/or files containing Plaintiffs' and Class Members' unencrypted PII were viewed and/or used by some unknown third party.

32. Defendants do not know, and/or otherwise has refused to disclose the actual number of applications/files on the zip drive that was stolen and/or lost.

33. Given the period of time during which Defendants admits that the lost and/or

stolen zip drive has been missing, the Plaintiffs' and Class Members' PII could have been bought and sold several times on the robust international cyber black market while the Plaintiffs and Class Members would have had no chance whatsoever to take measures to protect their privacy.

34. Defendants' wrongful actions and/or inaction to wit, failing to protect Plaintiffs' and Class Members' PII with which it was entrusted- directly and/or proximately caused the theft and/or misplacement of the zip drive and dissemination into the public domain of Plaintiffs' and Class Members' PII without their knowledge, authorization, and/or consent. As a further direct and/or proximate result of Defendants' wrongful actions and/or inaction, Plaintiffs and Class Members have suffered, and will continue to suffer, damages including, without limitation: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; (vii) anxiety and emotional distress; and (viii) rights they possess under the DPPA for which they are entitled to compensation.

35. As a result of Defendants' failure to properly safeguard and protect Plaintiffs' and Class Members' PII, Plaintiffs' and Class Members' privacy has been

invaded and their rights violated. Their compromised PII was private and sensitive in nature and was left inadequately protected by Defendants. Defendants' wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiffs and Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.

36.    Identity theft occurs when a person's PII, such as the person's name, e-mail address, address, Social Security number, billing and shipping addresses, phone number and credit card information is used without his or her permission to commit fraud or other crimes.[2]

37.    According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[3] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute [PII]."[4] The FTC estimates that the identities of as many as 9 million Americans are stolen each

---

[2] See http://www.consumer.ftc.gov/features/feature-0014-identiy-theft.

[3] Protecting Consumer Privacy in an Era of Rapid Change FTC Report (March 2012) (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

[4] Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report, 35-38 (Dec. 2010), available at http:www.ftc.gov/os/2010/12/101201privacyreport.pdf; Comment of Center for Democracy & Technology, cmt. #00469, at 3; Comment of Staz, Inc., cmt. #00377, at 11-12.

year. *Id*.

38.    As a direct and/or proximate result of the Data Breach, Plaintiffs and Class Members will now be required to take the time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, placing "freezes" and "alerts" with the credit reporting agencies, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity. Because Plaintiffs' and Class Members' Social Security numbers were stolen and/or compromised, they also now face a significantly heightened risk of identity theft.

39.    According to the FTC, identity theft is serious. "Once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance. An identity thief can file a tax refund in your name and get your refund. In some extreme cases, a thief might even give your name to the police during an arrest."[5]

40.    Identity thieves also use Social Security numbers to commit other types of fraud. The GAO found that identity thieves use PII to open financial accounts and payment card accounts and incur charges in a victim's name. This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, while in the meantime causing significant harm to the

---

[5]    *See* Federal Trade commission, *Signs of Identity Theft*, http://www.consumer.ftc.gov/articles/0271-signs-identity-theft.

victim's credit rating and finances. Moreover, unlike other PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future.

41.    Identity thieves also use Social Security numbers to commit other types of fraud, such as obtaining false identification cards, obtaining government benefits in the victim's name, committing crimes and/or filing fraudulent tax returns on the victim's behalf to obtain fraudulent tax refunds. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments, and/or obtain medical services in the victim's name. Identity thieves also have been known to give a victim's personal information to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record. The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

42.    The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card. In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently, as well as show that he has done all he can to fix the problems resulting from the misuse.[6] Thus, a person whose PII has been stolen cannot obtain a new Social

---

[6] *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327 (http://www.ssa.gov/pubs/10064.html).

Security number until the damage has already been done.

43.    Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start. For some victims of identity theft, a new number may actually create new problems. Because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

44.    As a direct and/or proximate result of Defendants' wrongful actions and/or inaction and the Data Breach, the thieves and/or their customers now have Plaintiffs' and Class Members' PII. As such, Plaintiffs and Class Members have been deprived of the value of their PII.[7]

45.    Plaintiffs' and Class Members' PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for a number of years. Identity thieves and other cyber criminals openly post stolen credit card numbers, Social Security

---

[7] See, e.g., John T. Soma, J. Zachary Courson, John Cadkin, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009)("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.")(citations omitted); ABC News Report, http://abcnews.go.com/Health/medical-records-private-abc-news-investigation/story?id=17228986&page=2#. UGRgtq7yBR4.

numbers, and other personal financial information on various Internet websites, thereby making the information publicly available. In one study, researchers found hundreds of websites displaying stolen personal financial information. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism the "Safe Browsing list." The study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."[8]

46. The Data Breach was a direct and/or proximate result of Defendants' failure to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and/or disclosure, as required by various state regulations and industry practices.

47. Defendants flagrantly disregarded and/or violated Plaintiffs' and Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII to protect against anticipated threats to the security or integrity of such information. Defendants' security deficiencies allowed unauthorized individuals to access, remove from its premises, transport, disclose, and/or compromise the PII of

---

[8] StopTheHacker, The "Underground Credit Card Blackmarket,
http://stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket.

thousands of individuals, including Plaintiffs and Class Members.

48.   Defendants' wrongful actions and/or inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' PII without their knowledge, authorization, and consent. As a direct and proximate result of Defendants' wrongful actions and/or inaction and the resulting Data Breach, Plaintiffs and Class Members have incurred damages in the form of, inter alia: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; (vii) anxiety and emotional distress; and (viii) rights they possess under the DPPA and the FCRA, for which they are entitled to compensation.

## IV. CLASS ALLEGATIONS

49.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this class action as a national class action on behalf of themselves and the following Class of similarly situated individuals:

50.   All persons whose personal identifying information (PII) was stolen and/or exposed to potential theft from Defendants by unknown third parties between February 9, 2017 through the present.

51.   Excluded from the Class are the (i) owners, officers, directors, employees, agents and/or representatives of Defendants and their parent entities, subsidiaries, affiliates, successors, and/or assigns, and (iii) the Court, Court personnel, and members of their immediate families.

52.   The putative Class is, through information and belief, comprised of several thousand persons, making joinder impracticable.  Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

53.   The rights of each Class Member were violated in a virtually identical manner as a result of Defendants' willful, reckless, and/or negligent actions and/or inactions.

54.   Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, inter alia:

(a) Whether Defendants violated the DPPA and the FCRA by failing to properly secure Plaintiffs' and Class Members' PII;

(b) Whether Defendants willfully, recklessly, and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiffs' and Class Members' PII;

(c) Whether Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in protecting and securing their PII;

(d) Whether Defendants breached its duty to exercise reasonable care in protecting and securing Plaintiffs' and Class Members' PII;

(e) Whether Defendants' were negligent in failing to secure Plaintiffs' and Class

Members' PII;

(f) Whether by publicly disclosing Plaintiffs' and Class Members' PII without authorization, Defendants invaded Plaintiffs' and Class Members' privacy; and

(g) Whether Plaintiffs and Class Members sustained damages as a result of Defendants' failure to secure and protect their PII.

55. Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories, including:

(a) The recovery of statutory and punitive damages for Defendant's violations of federal and state privacy laws.

56. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are committed to vigorously litigating this matter. Further, Plaintiffs have secured counsel experienced in handling consumer rights class actions. Neither Plaintiffs nor their counsel has any interests that might cause them not to vigorously pursue this case.

57. This action should be maintained as a Class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class.

58. A Class action is a superior method for the fair and efficient adjudication of controversy. The interest of Class members in individually controlling

prosecution of separate claims against Defendants is small. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained using Defendants' records.

59.    Class certification, therefore, is appropriate pursuant to FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

60.    Class certification also is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate with respect to the class as a whole.

61.    The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.

## V.  CAUSES OF ACTION

### COUNT I.

### DRIVER'S PRIVACY PROTECTION ACT

62.    Plaintiffs incorporate by reference all the foregoing paragraphs.

63.    Defendants willfully and/or negligently violated provisions of the Driver's Privacy Protection  Act.  Defendant's violations include, but are not limited to the

following:

(a) Defendants violated 18 U.S.C. §§ 2721 et. seq. by willfully and/or negligently failing to specifically protect and limit the dissemination of Plaintiffs' and Class Members' PII into the public domain, as was and is contrary to established State and Federal law.

64. As a result of the above and continuing violations of the DPPA, Defendants are liable to the Plaintiffs in the sum of Plaintiffs' actual damages, statutory damages, punitive damages, costs, disbursements, and reasonable attorneys' fees, along with any appropriate injunctive relief.

## COUNT II.

## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

65. Plaintiffs incorporate by reference all the foregoing paragraphs.

66. Defendants' failure to secure and protect Plaintiffs' and Class Members' PII directly resulted in the public disclosure of such private information.

67. Dissemination of Plaintiffs' and Class Members' PII is not of a legitimate public concern; publicity of their PII would be, is, and will continue to be offensive to reasonable people.

68. Plaintiffs and the Class Members were (and continue to be) damaged as a direct and/or proximate result of invasion of their privacy by publicly disclosing their private facts (i.e., their PII) in the form of, inter alia: (i) improper disclosure of their PII; (ii) loss of privacy; (iii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iv) the value of their time spent mitigating identity theft and/or identity

fraud and/or the increased risk of identity theft and/or identity fraud; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and (vi) anxiety and emotional distress, for which they are entitled to compensation. At the very least, Plaintiffs and the Class Members are entitled to nominal damages.

69.   Defendants' wrongful actions and/or inaction (as described above) constituted (and continue to constitute) an ongoing invasion of Plaintiffs' and Class Members' privacy by publicly disclosing their private facts (i.e., their PII).

## COUNT III.

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

70.   Plaintiffs incorporate by reference all the foregoing paragraphs.

71.   The Fair Credit Reporting Act ("FCRA") requires consumer reporting agencies to adopt and maintain procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information. 15 U.S.C. § 1681(b).

72.   FCRA defines a "consumer reporting agency" as:

Any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

73.    FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b). 15 U.S.C. § 1681a(d)(1).

74.    FCRA specifically protects medical information, restricting its dissemination to limited instances. See, e.g., 15 U.S.C. §§ 1681a(d)(3); 1681b(g); 1681c(a)(6).

75.    Defendants are Consumer Reporting Agencies as defined under FCRA because on a cooperative nonprofit basis and/or for monetary fees, Flowers regularly engages, in whole or in part, in the practice of assembling information on consumers for the purpose of furnishing Consumer Reports to third parties and/or uses interstate commerce for the purpose of preparing and/or furnishing Consumer Reports.

76.    As a Consumer Reporting Agency, Defendants were (and continue to be) required to adopt and maintain procedures designed to protect and limit the dissemination of consumer credit, personnel, insurance and other information (such as Plaintiffs' and Class Members' PII) in a manner fair and equitable to consumers while maintaining the "confidentiality, accuracy, relevancy and proper utilization of such information. Defendants, however, violated FCRA by failing to adopt and maintain such protective procedures which, in turn, directly and/or proximately resulted in the theft of Plaintiffs' and Class Members' PII and its wrongful dissemination into the public

domain. By way of example, Defendants could have:

a.  Conducted periodic risk assessments and gap analysis relating to privacy and information security-related policies, processes and procedures. A comprehensive risk analysis would have identified the (i) physical vulnerability of Defendants' file locations, and (ii) administrative vulnerabilities associated with storing files containing consumers' PII in an unsecured, unlocked location.

b.  Developed privacy and information security related performance and activity metrics, such as the performance of ongoing compliance reviews, physical walkthroughs (roundings), hotline and complaint management- and ensure that these metrics were an integral part of Defendants' corporate governance program.

c.  Taken measures to monitor and secure the room and areas where the files containing the PII were stored, maintained, and used, or taken measures to insure that no PII was stored in unsecured, unlocked, and/or unguarded locations.

77.  On information and belief, Defendants took none of these proactive actions to secure and protect Plaintiffs' and Class Members' PII.

78.  Plaintiffs' and Class Members' PII, in whole or in part, constitutes personal identifying information as defined by FCRA. Defendants violated FCRA by failing to specifically protect and limit the dissemination of Plaintiffs' and Class Members' PII (i.e., their personal private information) into the public domain.

79.   As a direct and/or proximate result of Defendants' willful and/or reckless violations of FCRA, as described above, Plaintiffs' and Class Members' PII was stolen and/or made accessible to unauthorized third parties in the public domain.

80.   As a direct and/or proximate result of Defendants' willful and/or reckless violations of FCRA, as described above, Plaintiffs and Class Members were (and continue to be) damaged in the form of, without limitation, expenses for credit monitoring and identity theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy and other economic and non-economic harm.

81.   Plaintiffs and Class Members, therefore, are entitled to compensation for their actual damages including, inter alia, (i) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (ii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iii) deprivation of the value of their PII, for which there is a well-established national and international market; (iv) anxiety and emotional distress; and (v) statutory damages of not less than $100, and not more than $1000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. §168ln(a).

## COUNT IV.

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

82.   Plaintiffs incorporate by reference all the foregoing paragraphs.

83.   In the alternative, and as described above, Defendants negligently violated FCRA

by failing to adopt and maintain procedures designed to protect and limit the dissemination of Plaintiffs' and Class Members' PII/PHI for the permissible purposes outlined by FCRA which, in turn, directly and/or proximately resulted in the theft and dissemination of Plaintiffs' and Class Members' PII/PHI into the public domain. By way of example, Flowers could have:

a. Conducted periodic risk assessments and gap analysis relating to privacy and information security-related policies, processes and procedures. A comprehensive risk analysis would have identified the (i) physical vulnerability of Flowers's file locations, and (ii) administrative vulnerabilities associated with storing files containing patients' PII in an unsecured, unlocked location.

b. Developed privacy and information security related performance and activity metrics, such as the performance of ongoing compliance reviews, physical walkthroughs (roundings), hotline and complaint management- and ensure that these metrics were an integral part of Flowers's corporate governance program.

c. Taken measures to monitor and secure the room and areas where the files containing the PII were stored, maintained, and used, or taken measures to insure that no PII was stored in unsecured, unlocked, and/or unguarded locations.

84. On information and belief, Defendants took none of these proactive actions to

secure and protect Plaintiffs' and Class Members' PII.

85.   It was reasonably foreseeable that Flowers's failure to implement and maintain procedures to protect and secure Plaintiffs' and Class Members' PII would result in an unauthorized third party gaining access to their PII for no permissible purpose under FCRA.

86.   As a direct and/or proximate result of Defendants' negligent violations of FCRA, as described above, Plaintiffs' and Class Members' PII was stolen and/or made accessible to unauthorized third parties in the public domain.

87.   As a direct and/or proximate result of Defendants' negligent violations of FCRA, as described above, Plaintiffs and the Class Members were (and continue to be) damaged in the form of, without limitation, expenses for credit monitoring and identity theft insurance, out-of- pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

88.   Plaintiffs and Class Members, therefore, are entitled to compensation for their actual damages, including, inter alia: (i) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (ii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iii) deprivation of the value of their PII, for which there is a well-established national and international market; (iv) anxiety and emotional distress; and (v) attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C.

§1681o(a).

## COUNT V.

## <u>NEGLIGENCE</u>

89.  Plaintiffs incorporate by reference all the foregoing paragraphs.

90.  Defendants had a duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII.

91.  Defendants violated its duty by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII (as set forth in detail above).

92.  It was reasonably foreseeable that Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII would result in an unauthorized third party gaining access to such information for no lawful purpose.

93.  Plaintiffs and the Class Members were (and continue to be) damaged as a direct and/or proximate result of Defendants' failure to secure and protect their PII in the form of, inter alia, (i) improper disclosure of their PII; (ii) loss of privacy; (iii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iv) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and (vi) anxiety and emotional distress- for which they are entitled to compensation.

94.  Defendants' wrongful actions and/or inaction (as described above) constituted

negligence at common law.

## COUNT VI.

## <u>INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS</u>

95.    Plaintiffs incorporate by reference all the foregoing paragraphs.

96.    Defendants' failure to secure and protect Plaintiffs' and Class Members' PII directly resulted in the public disclosure of such private information.

97.    Dissemination of Plaintiffs' and Class Members' PII is not of a legitimate public concern; publicity of their PII would be, is, and will continue to be offensive to reasonable people.

98.    Plaintiffs and the Class Members were (and continue to be) damaged as a direct and/or proximate result of Advocate's invasion of their privacy by publicly disclosing their private facts (i.e., their PII) in the form of, inter alia: (i) improper disclosure of their PII; (ii) loss of privacy; (iii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (iv) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (v) deprivation of the value of their PII, for which there is a well-established national and international market; and (vi) anxiety and emotional distress- for which they are entitled to compensation. At the very least, Plaintiffs and the Class Members are entitled to nominal damages.

99.    Defendants' wrongful actions and/or inaction (as described above) constituted (and continue to constitute) an ongoing invasion of Plaintiffs' and Class Members'

privacy  by publicly disclosing their private facts (i.e., their PII).

## VI.  REQUEST FOR RELIEF

100.    DAMAGES. As a direct and/or proximate result of Defendants' wrongful actions and/or inaction (as described above), Plaintiffs and Class Members suffered (and continue to  suffer) damages in the form of, inter alia: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; (vii) anxiety and emotional distress; and (viii) rights they possess under the DPPA and the FCRA, for which they are entitled to compensation. Plaintiffs and Class Members also are entitled to recover statutory damages and/or nominal damages. Plaintiffs' and Class Members' damages were foreseeable by Defendants and exceed the minimum jurisdictional limits of this Court.

101.    EXEMPLARY DAMAGES. Plaintiffs and Class Members also are entitled to exemplary damages as punishment and to deter such wrongful conduct in the future.

102.    INJUNCTIVE RELIEF. Plaintiffs and Class Members also are entitled to injunctive relief in the form of, without limitation, requiring Defendants to, inter

alia, (i) immediately disclose to Plaintiffs and Class Members the precise nature and extent of their PII contained within the files stolen by and/or otherwise accessible to the third party who stole the zip drive, (ii) make prompt and detailed disclosure to all past, present and future patients affected by any actual or potential data breaches of their PII, (iii) immediately secure the PII of its past, present, and future patients, (iv) implement the above- referenced proactive policies and procedures in order to secure and protect its patients' PII and be in a position to immediately notify them about any data breaches, (v) submit to periodic compliance audits by a third party regarding the implementation of and compliance with such policies and procedures, and (vi) submit to periodic compliance audits by a third party regarding the security of its patients' PII within its possession, custody and control.

103.   ATTORNEY'S FEES, LITIGATION EXPENSES AND COSTS. Plaintiffs and Class Members also are entitled to recover their attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, inter alia, 18 U.S.C. § 2724 (b)(3) and 15 U.S.C. §§ 1681n(a); o(a).

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, respectfully request that (i) Defendants be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiffs be designated the Class Representatives, and (iv) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, on behalf of themselves and Class Members, further request that upon final trial or

hearing, judgment be awarded against Defendants, in favor of Plaintiffs and the Class

Members, for:

- actual damages, consequential damages, DPPA and FCRA statutory damages and/or nominal damages (as described above) in an amount to be determined by the trier of fact;

- punitive damages;

- exemplary damages;

- injunctive relief as set forth above;

- pre- and post-judgment interest at the highest applicable legal rates;

- attorney's fees and litigation expenses incurred through trial and any appeals;

- costs of suit; and

- such other and further relief that this Court deems just and proper.

## VII.   JURY TRIAL DEMANDED

Plaintiffs, on behalf of themselves and all others similarly situated, respectfully

demand a trial by jury on all of the claims and causes of action so triable.

Dated this 20th day of June, 2017.

Respectfully submitted,


By: s/Thomas J. Lyons Jr.
Thomas J. Lyons Jr., Esq.
Attorney I.D. #:  0249646
CONSUMER JUSTICE CENTER P.A.
367 Commerce Court
Vadnais Heights, MN  55127

Telephone:  651-770-9707
Facsimile:  651-704-0907
tommy@consumerjusticecenter.com

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF</u>

STATE OF MINNESOTA            )
                              ) ss
COUNTY OF _____      )

     I, Levi Jensen, having first been duly sworn and upon oath, depose and say as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.


                                     s/Levi Jensen_____
                                     Levi Jensen


Subscribed and sworn to before me
this <u>12</u> day of June, 2017.


s/Jeanne Marie Eisenhuth_____
Notary Public

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF</u>

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF _____    )

      I, Whitney Strantz, having first been duly sworn and upon oath, depose and say as follows:

6.  I am the Plaintiff in this civil proceeding.
7.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
8.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
9.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
10. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.


                        <u>s/Whitney Strantz</u>
                        Whitney Strantz


Subscribed and sworn to before me
this <u>16</u> day of June, 2017.


<u>s/Teresa C. Rodriguez-Xalate</u>
Notary Public

33